**Earl ALLEN; Donald Barkley, Plaintiffs-Appellants,**

**v.**

**Thomas G. TOOMBS, individually and in his official capacity as Administrator of the Corrections Division of the State of Oregon; J.C. Keeney, individually and in his official capacity as Superintendent of Oregon State Penitentiary, Defendants-Appellees.**

**No. 86–3805.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1987.

Decided Sept. 8, 1987.

---

* Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by

designation.

Allen Hart and Rick T. Haselton, Portland, Or., for plaintiffs-appellants.

Philip Schradle, Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Before GOODWIN and FERGUSON, Circuit Judges, and STEPHENS, Jr.,* District Judge.

FERGUSON, Circuit Judge:

Plaintiffs/appellants Carl Allen and Donald Barkley ("plaintiffs") appeal from the district court's grant of the defendants' motion for summary judgment on their

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

claim for declaratory and injunctive relief under 42 U.S.C. § 1983. The plaintiffs' claim, alleging violations of the First and Fourteenth Amendments, arose from prison policies regarding the participation of inmates of the Disciplinary Segregation Unit in two rituals of Native American religion, the Pipe Ceremony and the Sacred Sweat Lodge. We affirm the district court.

## I.

Plaintiffs are Native Americans presently incarcerated in the Oregon State Penitentiary ("OSP"). OSP is a maximum security prison located in Salem, Oregon. It currently houses about 2000 prisoners, of whom 80–100 are Native Americans. OSP includes the Disciplinary Segregation Unit ("DSU"),[1] which is a separate building some distance from the cell block in which the general prison population is housed. Inmates confined in the DSU are those who constitute the greatest security risk to the institution, staff, and other inmates. OSP policy prohibits regular contact between DSU inmates and inmates in the general prison population, although there are some occasions under which supervised contact is permitted, for familial visits between general population inmates and DSU inmates, and for police investigations. DSU inmates are also allowed a limited number of trips outside the segregation unit to confer with lawyers, for visits with wives or girlfriends, and for medical purposes. DSU staff accompany the inmates on all such trips.

At the time of filing their complaint both plaintiffs had been in the DSU for more than a month.[2] While confined in the DSU, plaintiffs repeatedly requested that they be allowed to participate in the ceremonies of their religion:[3] they asked that a Pipe Bearer be allowed to come to the DSU to perform the Pipe Ceremony[4] in front of their cells, and that DSU inmates be allowed access to the Sacred Sweat Lodge.[5] These requests were either ignored or summarily denied. DSU inmates who were adherents of other faiths had access to the rituals of their religion as OSP permitted priests, ministers, and spiritual leaders to perform religious rituals in the unit and allowed inmates to participate in them.

On February 4, 1985, about three months before plaintiffs filed suit, their attorney wrote to defendant Keeney detailing the

1. During the past year an average of 90–100 inmates have been confined in the DSU at any one time. Typically, the percentage of prisoners in the DSU who are Native Americans will be approximately the same as the percentage of Native Americans in the general inmate population.

2. On a previous occasion, plaintiff Allen had been confined in the DSU for 21 months, and plaintiff Barkley for 19 months. The average length of stay in the DSU is seven days, but there are some longer sentences. According to the OSP superintendent, defendant Keeney, at any given time probably half the inmates in DSU are there for a month or more. During Superintendent Keeney's tenure, the longest period of confinement in the DSU has been three years.

3. Plaintiff's religious beliefs are those of the Native American religion, organized at OSP under the auspices of the Lakota Oyate-Ki Culture Club. Adherents of the Native American religion are the third-largest religious group in the OSP population, exceeded in number only by Catholics and Protestants.

4. The Pipe Ceremony begins by the Pipe Holder and other participants purifying themselves and the pipe by burning sage or sweet grass. The Pipe Holder then fills the pipe with tobacco, praying to various spirits. The other participants pray individually. The Pipe Bearer lights the pipe and passes it to the other participants. When the bowl is empty, the Pipe Bearer cleans it and takes apart the pipe, thereby ending the ceremony. The Pipe Ceremony is held once a week for Native American inmates in the general prison population. The ceremony is conducted either by a religious leader from outside the penitentiary, or by an inmate Pipe Bearer.

5. The Sacred Sweat Lodge ritual takes place in a small hut-like structure built from willows and blankets. Large rocks are heated in a fire pit outside the lodge, and then, by means of a pitchfork, are placed in the lodge, where water is poured over them to create steam. Herbs are burned for purification. Participants enter the lodge naked, to pray and meditate, and to purge the body and the spirit. The ceremony lasts between one and one-half hours and two hours. At OSP, a sweat lodge and adjoining fire pit have been built in the industrial area of the prison for the use of inmates in the general prison population. The ceremony is held weekly on Saturdays.

plaintiffs' concerns over the unavailability of a Pipe Ceremony for Native Americans in the DSU. On May 21, 1985, plaintiffs filed their complaint. Plaintiffs alleged that prison policies denied DSU inmates any opportunity to attend and participate in either the Pipe Ceremony or the Sacred Sweat Lodge, and that these policies therefore abridged their constitutional rights to free exercise of their religion and to equal protection of the laws. Plaintiffs also alleged that OSP unconstitutionally limited the number of general population inmates, as distinguished from DSU inmates, who were permitted to participate in the weekly Sweat Lodge Ceremony.[6]

On August 5, 1985, defendant Keeney issued an official memorandum announcing a new policy with respect to the access of DSU inmates to the Pipe Ceremony. The memorandum provided that the ceremony would be available on a weekly or monthly basis to DSU inmates, so long as an outside volunteer Pipe Bearer was available.[7] The Pipe Bearer would prepare the pipe in front of the cell of a Native American who had requested the ceremony, pass the pipe through the bars, and at the end of the ceremony, move to the next inmate requesting the ceremony.

Both parties then moved for summary judgment. Plaintiffs argued that the defendants' newly announced policy of allowing DSU inmates to participate in the Pipe Ceremony, but requiring that an outside, volunteer spiritual leader, and not an inmate Pipe Bearer, conduct the ceremony, was unconstitutional. They argued that the policy infringed their rights under the free exercise and equal protection clauses, because the limited availability of outside volunteer leaders resulted in an undue restriction on access to spiritual counseling and the rites of their religion.

On April 1, 1986, the district court granted defendants' motion for summary judgment on plaintiffs' claims concerning the DSU inmates' access to both the Pipe Ceremony and the Sweat Lodge. Judgment was entered on April 8, 1986, and plaintiffs timely appeal.

## II.

A grant of summary judgment is reviewable de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Since the parties in the instant case agree that there are no genuine issues of material fact, the issue for this court is whether the district court correctly applied the substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

## III.

### A. *Free exercise claims*

Several well-settled principles govern the court's consideration of constitutional challenges to prison regulations. First, inmates clearly retain the protections afforded by the First Amendment, *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), including its directive that no law shall prohibit the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319, 321–22, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

Incarceration, however, necessarily brings about the withdrawal or limitation of many of the privileges and rights available to nonprisoners. *See Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Such restrictions arise both from the fact of incarceration and from the valid penological considerations underlying the corrections system. *Id.* In the context of the First Amendment,

a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to

---

**6.** The district court entered summary judgment for plaintiffs on this claim and defendants do not appeal.

**7.** Native Americans in the general prison population rely on volunteer Pipe Bearers from outside to conduct the Pipe Ceremony. When no such volunteer is available, the ceremony is conducted by an inmate spiritual leader.

inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. . . .

*Pell,* 417 U.S. at 822, 94 S.Ct. at 2805.

The plaintiffs argue that the penitentiary's policies governing the access of DSU inmates to rituals of the Native American religion unconstitutionally burden their rights under the First Amendment to the free exercise of their religion. The district court summarily disposed of plaintiffs' free exercise claims, noting only that the Pipe Ceremony restriction "both furthers the defendants' interest in security and is necessary to isolation of inmates in DSU" and that as to the Sweat Lodge ceremony, "the current restriction does further a legitimate penal interest in security."

■ In two recent opinions, the Supreme Court has set forth the factors a court should consider in determining the reasonableness of a challenged restriction on First Amendment rights. *See Turner v. Safley,* — U.S. —, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz,* — U.S. —, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and the governmental objective itself must be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *See Turner,* 107 S.Ct. at 2262. Applying this analytical framework, we conclude that the district court correctly granted summary judgment for the defendants on the plaintiffs' claim concerning access to the Sweat Lodge Ceremony.

■ Plaintiffs ask that inmates confined in the DSU for more than one month be allowed monthly access to the Sweat Lodge, after the regular ceremony for general population inmates is concluded. Defendants contend, however, that the prohibition on access to the Sweat Lodge is necessary to maintain security in the DSU. In particular, they note that the ceremony requires the use of an axe to chop wood for a fire, red hot stones to heat the lodge, and a pitchfork to transport the stones from the fire to the lodge interior. Defendants argue, we think not unreasonably, that the use of these materials necessarily involves a substantial security risk every time the ceremony is held anywhere in the OSP. Defendants also contend, and we are persuaded, that these risks would be magnified if DSU inmates were given access to the Sweat Lodge.

There is therefore clearly a "valid, rational" connection between the restriction on access to the Sweat Lodge and the legitimate security concerns of OSP administrators. *See Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3217, 3232, 82 L.Ed.2d 438 (1984). Moreover, the restriction appears to operate in a neutral manner, without regard to the content of the restricted activity. *See Pell,* 417 U.S. at 828, 94 S.Ct. at 2807. No DSU inmates are allowed outside of the unit for religious services. Although inmates may be escorted from DSU for visits with lawyers, and wives or girlfriends, it appears from the record that allowing them access to the Sweat Lodge would entail a different order of security concerns.

Because the defendants' prohibition on DSU inmates' access to the Sweat Lodge ceremony is reasonably related to the defendants' legitimate concern for prison security, we affirm the district court's grant of summary judgment.

B. *The Pipe Ceremony*

■ Plaintiffs challenge the OSP policy prohibiting inmate spiritual leaders from conducting the Pipe Ceremony for DSU inmates when no outside Pipe Bearer is available. They ask that when an outside Pipe Bearer is not available to perform a weekly Pipe Ceremony in the DSU, a previously designated inmate Pipe Bearer should be granted access to do so.

568

There is nothing in the record, however, to indicate to this court that a DSU inmate has been denied access to the Pipe Ceremony because of the lack of an outside Pipe Bearer. Plaintiffs argue that the policy unnecessarily restricts the DSU inmates' access to the ceremonies of their religion, but they make no showing that in practice such a restriction has occurred. The plaintiffs state that there is no record evidence that an outside Pipe Bearer has performed a Pipe Ceremony in the DSU since the new policy came into effect in August 1985. Neither, however, is there information in the record as to how many Native American inmates have been confined in the DSU during that period, the length of their confinement, or whether requests for the Pipe Ceremony were made.[8]

The plaintiffs' allegations as to the impact of defendants' policy on their free exercise rights under the First Amendment are therefore speculative. Since there is no evidence in the record that plaintiffs' First Amendment rights were violated by the defendants' requirement that a Pipe Bearer be an outside volunteer rather than an inmate, we do not need to reach the question of whether the restriction was a valid response to a legitimate penological concern. Since, however, this court may affirm the district court on any ground finding support in the record, *see Smith v. Block*, 784 F.2d 993, 996 n. 4 (9th Cir.1986), we affirm the grant of summary judgment for the defendant, on the ground that there is insufficient evidence in the record to support plaintiffs' free exercise claims.

### C. *Equal Protection Claim*

█ Plaintiffs assert that the OSP policy prohibiting an inmate Pipe Bearer from conducting the Pipe Ceremony in the DSU violates their right to equal protection.[9] They note that Catholic and Protestant DSU inmates can obtain spiritual guidance

immediately upon request because the state provides full-time chaplains of those denominations on the prison premises. Since no equivalent of a chaplain is provided for Native Americans, their access to spiritual guidance is conditioned upon the availability of an outside Pipe Bearer. When no outside volunteer is available, plaintiffs argue, Native American inmates are denied any access to spiritual guidance, and are therefore denied opportunities to pursue their faith comparable to those afforded to Catholics and Protestants. Plaintiffs do not argue that the state be required to employ a Pipe Bearer for the Native American inmates of OSP, but that the policy of access be modified to provide alternative opportunities for spiritual guidance and counseling.

The Supreme Court has made clear that an inmate who is an adherent of a minority religion must be afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The Court clarified the applicable standard in an explanatory footnote, stating:

> We do not suggest, of course, that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

*Id.*, n. 2, 92 S.Ct at 1081 n. 2.

The single issue presented here is thus whether the OSP's policy of allowing week-

8. The record also lacks evidence of the frequency with which the general inmate population has access to outside Pipe Bearers, as opposed to inmate spiritual leaders.

9. In their statement of issues, the plaintiffs presented the question of whether the restriction on access to the Sweat Lodge violates their

equal protection rights, but they provided no further discussion of this issue in their brief. Since no DSU inmates are allowed to leave the segregation unit for religious ceremonies, it is fairly clear that applying the standard set forth in the text, infra, the plaintiffs' claim on this issue must necessarily fail.

ly access for an outside Pipe Bearer, when one is available, provides a reasonable opportunity for Native Americans in the DSU to pursue their faith—whether there has been a good faith accommodation of the plaintiffs' rights in light of practical considerations. *See Gittelmacker v. Prasse,* 428 F.2d 1, 4 (3d Cir.1970). Since the prison administration is not under an affirmative duty to provide each inmate with the spiritual counselor of his choice, *id.,* and since the OSP permits outside religious leaders to enter the DSU to address the religious needs of Native American inmates,[10] we conclude that the OSP policy provides a reasonable opportunity for the plaintiffs to exercise their faith, and does not violate the equal protection clause. The decision of the district court is

AFFIRMED.

---

**10.** The plaintiffs have made no showing in the record that any Native American inmate in the DSU has been denied access to spiritual counsel- ors because of the unavailability of volunteer religious leaders.