978 F.2d 715
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Raymond Ludwig FROST, Plaintiff-Appellant,
v.
Thomas AGNOS, Sheriff, Maricopa County Sheriff's Office;
David Alster, Jail Commander, Maricopa County Sheriff's
Office; Mr. Seeverson, Detention Bureau Commander, Maricopa
County Sheriff's Office, Defendants-Appellees.
 No. 91-15803.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 22, 1992.*
Decided Oct. 26, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Raymond Ludwig Frost, an Arizona state prisoner, appeals pro se the district court's summary judgment dismissal of his 42 U.S.C. § 1983 civil rights action alleging that prison officials violated his first amendment right to free exercise of his religion by prohibiting him from attending congregate religious services. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 BACKGROUND
 
 3
 Frost is a close custody inmate in the Maricopa County Jail system. In July 1988, he asked prison officials to allow him to attend congregate religious services. His request was denied pursuant to a Maricopa County Sheriff's Office policy mandating that close custody inmates be segregated from general population inmates. Pursuant to his counselor's suggestion, Frost asked Lieutenant David Alster, the jail commander, to allow him to attend the congregate services. In early 1988, Alster issued Frost written authorization granting him an exception to the prison policy. Shortly thereafter, Alster rescinded the authorization. Frost challenged the rescission. Alster responded in writing, stating that he rescinded the authorization due to Frost's insubordinate attitude and verbal harassment of prison officers.
 
 
 4
 Frost filed a 42 U.S.C. § 1983 action against Maricopa County prison officials, challenging the prison policy prohibiting him from attending congregate religious services due to his close custody status. He also challenged Alster's revocation of his prior order granting Frost an exception to the general policy. The district court granted summary judgment in favor of the prison officials on the ground that the general prison policy prohibiting close custody inmates from attending congregate religious services was reasonably related to legitimate penological interests.
 
 STANDARD OF REVIEW
 
 5
 We review de novo the district court's grant of summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir.1989). "A party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial." Id.
 
 DISCUSSION
 I. Constitutionality of Policy
 
 6
 Frost contends that the prison policy prohibiting close custody inmates from attending congregate religious services violates the first amendment.
 
 
 7
 A prison regulation that interferes with the right of prisoners to practice their religion is valid "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The following factors are relevant in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether the regulation has a logical connection to the interests invoked to justify it; (2) whether alternative means of exercising the right on which the regulation impinges remain open to inmates; (3) whether accommodating the asserted right will have an adverse effect on the prison; and (4) whether ready alternatives that fully accommodate the asserted right could be implemented at de minimis cost to valid penological interests. Allen v. Toombs, 827 F.2d 563, 567 (9th Cir.1987).
 
 
 8
 Here, the prison policy prohibiting close custody inmates, who constitute the greatest security risk, from attending congregate religious services is logically connected to the legitimate penological interests of security and safety. Frost has an alternative means of exercising his right through individual ministrations by the prison chaplain. Allowing close custody inmates to attend congregate religious services could jeopardize the security concerns expressed by prison officials. No ready alternative is apparent that would fully accommodate Frost's asserted right to attend congregate religious services at de minimis cost to valid penological interests. Accordingly, we find that the policy is constitutional. See Toombs, 827 F.2d at 567 (upholding prison policy prohibiting maximum security inmates from congregating with general population for the purpose of participating in rituals of the Native American religion).
 
 II. Revocation of Exception to Policy
 
 9
 Frost contends that Lieutenant Alster improperly rescinded his order exempting Frost from the policy prohibiting close custody inmates from attending congregate religious services to punish him for his attitude.
 
 
 10
 The affidavit submitted by Lieutenant Alster states that he rescinded the order due to Frost's verbal harassment of a female detention officer. This decision advances legitimate penological interests, including the maintenance of order in the prison and the institutional goal of rehabilitation. See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). Accordingly, the district court properly granted summary judgment on this issue.[1]
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Frost also contends that the district court erred in granting summary judgment because there was a material issue of fact regarding his classification status as a close custody inmate. However, as the district court correctly found, Frost's complaint does not raise the issue of his classification status; instead, it is limited to first amendment claims