988 F.2d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Keith Alan ROBBINS, Plaintiff-Appellant,
v.
M. Errol GRANT, Senior Chaplain, Defendant-Appellee.
 No. 92-15453.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1993.*
Decided March 3, 1993.
 
 Appeal from the United States District Court for the District of Arizona; No. CV-91-00296-CAM, C.A. Muecke, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Keith Alan Robbins, an Arizona state prisoner, appeals pro se the district court's summary judgment in favor of the defendant, a prison chaplain, in his 42 U.S.C. § 1983 civil rights action alleging that the defendant violated his first amendment right to free exercise of religion by prohibiting him from meeting in the prison chapel with another Buddhist inmate. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 On September 7, 1991, Robbins requested permission to use the prison chapel to meet with another inmate, Nuygen, whom Robbins contends is also a Buddhist. The request was denied on security grounds. Specifically, prison policy prohibits the meeting of unrelated inmates from different cell blocks.
 
 
 5
 Robbins then filed this action alleging that the prison chaplain discriminated against Robbins's religion by denying him access to the chapel and by not allowing him to meet with Nuygen.
 
 
 6
 In an affidavit filed in support of a cross-motion for summary judgment, the defendant stated that (1) Nuygen had been released from prison to the Northern Arizona Correctional Release Center on August 7, 1990, prior to Robbins's request; (2) even if Nuygen had not been released, the request would have been denied because Nuygen had not asked to meet with Robbins nor had he indicated that he was Buddhist, and that absent a request from both inmates, it would be unsound prison policy to allow such meetings because it could lead to one inmate gaining control over another inmate; and (3) use of the chapel for small numbers of prisoners is not practical because additional security officers would be required, and that instead, any religious services in that situation would be held in another appropriate room where security officers already were present. The defendant also indicated that prisoners of the Christian Science and Jewish faiths also had been denied access to the chapel because of their limited number within the prison.
 
 
 7
 The district court granted summary judgment in favor of the prison chaplain on the ground that denying Robbins access to the chapel to meet with an inmate who already had been released to a half-way house did not discriminate against Robbins's religion or deprive him of a reasonable opportunity to exercise his religious beliefs.
 
 II
 Merits
 A. Standard of Review
 
 8
 We review de novo a grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Summary judgment is appropriate if the evidence, construed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Moreover, a "party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial." Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir.1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).
 
 B. Analysis
 
 9
 The first amendment, as applied to the states by the fourteenth amendment, forbids the state from prohibiting the free exercise of religion. In Cruz v. Beto, the Supreme Court held that inmates must be given a reasonable opportunity to exercise their religious beliefs and that the prison must give a prisoner an opportunity to pursue his faith which is comparable to the opportunity afforded other prisoners. 405 U.S. 319, 322 (1972). The Court, however, further explained:
 
 
 10
 [w]e do not suggest, of course, that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.
 
 
 11
 Cruz, 405 U.S. at 322 n. 2. Moreover, even if a prison regulation interferes with the right of a prisoner to practice his religion, it is valid "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).[1]
 
 1. Use of Prison Chapel
 
 12
 Here, the prison chaplain's decision denying Robbins use of the prison chapel was permissible because it was reasonably related to valid penological interests, given (1) the need for extra security when the chapel is in use, (2) the limited number of Buddhists at the prison (Robbins and possibly Nuygen), and (3) the availability of alternative areas, if needed, for congregation. Moreover, the chapel is non-denominational and Robbins has not alleged a connection between the chapel and his ability to exercise his religious beliefs, nor is Buddhism the only minority faith which has been denied access to the chapel. See id.; Cruz, 405 U.S. at 322 n. 2.
 
 
 13
 2. Congregation with Other Inmates of the Same Faith
 
 
 14
 As Robbins acknowledges in his reply brief, Nuygen was no longer housed at the prison when Robbins submitted his request. Thus, the prison chaplain could not have granted Robbins's request even if he had wanted to do so. Given these circumstances, the district court did not err by granting summary judgment to the defendant on this issue. See Tzung, 873 F.2d at 1339-40.[2]
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Johnson's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The following factors are relevant in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether the regulation has a logical connection to the interests invoked to justify it; (2) whether alternative means of exercising the right on which the regulation impinges remain open to inmates; (3) whether accommodating the asserted right will have an adverse effect on the prison; and (4) whether ready alternatives that fully accommodate the asserted right could be implemented at de minimis cost to valid penological interests. Allen v. Toombs, 827 F.2d 563, 567 (9th Cir.1987)
 
 
 [2]
 To the extent Robbins's opening brief can be construed as raising the claim that prison officials violated his first amendment right to free exercise of religion by not giving him a strict vegetarian diet, it does not appear that this issue was ever properly presented or considered by the district court. Moreover, on appeal, Robbins states that his prison diet currently is the subject of other litigation in the district court. Given these circumstances, we decline to review this issue. See Animal Protection Inst. v. Hodel, 860 F.2d 920, 927 (9th Cir.1988) (court generally does not consider issued raised for the first time on appeal)