122 F.3d 1069
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mahdee AKBAR, Plaintiff,
and
Ishmael A. Muhammad; Troy Anthony Bartholomew; Anthony W.
Oliver, Plaintiffs-Appellants,
v.
James GOMEZ, Director of California Dept of Corrections;
K.W. Prunty, Warden; Bryant S. Gunn, Warden; B.L. Reed,
Chief Deputy Warden; Thomas Dermody, individually and as
Calipatria Chaplain Religious Coordinator, Defendants-Appellees.
 No. 96-55280.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1997
Decided Sept. 3, 1997.
 
 1
 Appeal from the United States District Court for the Southern District of California, No. CV-94-00129-NAJ Napoleon A. Jones, Jr., District Judge, Presiding.
 
 
 2
 Before: CHOY, HALL, Circuit Judges, and SHADUR, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 California state prisoners Ishmael A. Muhammad, Tray A. Bartholomew, and Anthony W. Oliver (collectively, "plaintiffs")[1] appeal from the district court's grant of summary judgment in favor of officials of the California Department of Corrections and of Calipatria State Prison, on their 42 U.S.C. § 1983 claim seeking damages and declaratory and injunctive relief. Plaintiffs allege constitutional violations arising from prison officials' interference with plaintiffs' right to practice their religion and unequal treatment of prisoners of different faiths. We have jurisdiction pursuant to 28 U.S.C. § 1291.[2] Having reviewed the summary judgment motion de nova, see Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996), we affirm the district court's grant of summary judgment, except as to the three unserved defendants.
 
 I. THREE UNSERVED DEFENDANTS
 
 5
 On January 27, 1994, several Muslim inmates at Calipatria State Prison ("Calipatria") filed a complaint, proceeding in forma pauperis, against James Gomez, Director of the California Department of Corrections, and K.W. Prunty, Warden of Calipatria, (collectively, "defendants"). Plaintiffs filed an amended complaint on February 9, 1995, also naming as defendants Bobbie Reed, the Chief Deputy Warden of Calipatria, B.S. Gunn, the former Warden of Calipatria, and Thomas Dermody, the Catholic Chaplain and Religious Activity Coordinator at Calipatria. Defendants Gunn, Feed, and Dermody were never served with the complaint although plaintiff Bartholomew filed a motion requesting a U.S. Marshal to effect service pursuant to Federal Rule of Civil Procedure 4(c)(2) on April 7, 1995. Plaintiffs claim that the district court's judgment must be vacated to the extent it is in favor of these defendants. We agree.
 
 
 6
 Rule 4(c)(2) of the Federal Rules of Civil Procedure directs the court to appoint a United States Marshal to effect service for a plaintiff who is proceeding in forma pauperis.[3] Fed.R.Civ.P. 4(c)(2). Pro se plaintiffs that are incarcerated are "entitled to rely on the U.S. Marshal for service of the summons and complaint, and ... should not be penalized by having [their] action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform the duties" required of them. Puett v. Blandford, 912 F.2d 270, 275 (9th Cir.1990).
 
 
 7
 The plaintiffs here were entitled to have the court appoint an officer to execute service. In fact, the plaintiffs reminded the court that these three defendants had not yet been served by a marshal. There is nothing to suggest that the failure to serve the defendants was due to any fault of the plaintiffs. Even if plaintiffs were at fault, at most the district court would have been authorized to "dismiss the action without prejudice" after giving notice to plaintiffs. Fed.R.Civ.P. 4(m); see e.g., McGuckin v. Smith, 974 F.2d 1050, 1058 (9th Cir.1992) (court should be lenient with service of process where plaintiff is incarcerated and proceeding in forma pauperis), overruled on other grounds by WMX Tech., Inc. v. Miller, 104: F.3d 1133, 1136 (9th Cir.1997).[4]
 
 II. EQUAL PROTECTION
 
 8
 Plaintiffs allege they were denied equal protection under the Fourteenth Amendment because they were prohibited from spending religious funds to purchase certain religious items and because they were not given equal access to a chaplain and religious volunteers.[5]
 
 
 9
 Plaintiffs claim that defendants prohibited them from spending religious funds to purchase prayer rugs but permitted Christian inmates to spend funds to purchase comparable religious items, such as crosses and candles. Even taken as true, this allegation does not raise a genuine issue of whether plaintiffs' equal protection rights were violated because equal protection guarantees a prisoner only "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Allen v. Toombs, 827 F.2d 563, 568 (9th Cir.1987) (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam)). Especially where, as here, there is evidence that plaintiffs were permitted to purchase Islamic books and various other religious items, they fail to show that they were precluded from reasonably pursuing their faith because they did not have prayer rugs.[6]
 
 
 10
 Plaintiffs also allege that defendants refused to allow volunteers to enter the prison to assist Muslim inmates while no other volunteers were refused entrance to the prison to assist other faiths. Likewise, plaintiffs claim defendants used discriminatory methods in their employment of full-time chaplains for some religious groups, favoring ones of the Christian faith, when they had the opportunity to hire a full-time Muslim chaplain. But defendants have no affirmative duty to afford Muslim inmates a full-time chaplain and their efforts to secure a part-time one and to recruit volunteers evidence a "good faith accommodation" of plaintiffs' rights. See Allen, 827 F.2d at 569. Furthermore, defendants submit documentation showing that during the months of July, August, and September of 1995, 24 Islamic services were held, compared to 15 Jewish services and 48 Roman Catholic services, and that Muslim inmates participate in various Islamic holy days, including the holy month of Ramadan. We find that plainttiffs have been afforded reasonable opportunities to pursue their faith as compared to their Jewish and Christian counterparts.
 
 III. FREE EXERCISE
 
 11
 Plaintiffs contend their First Amendment rights to free exercise of religion were violated because they were prohibited from purchasing hygienic prayer rugs.[7]
 
 
 12
 In order to establish a free exercise violation, plaintiffs must show the defendants burdened the practice of their religion, by preventing them from engaging in conduct mandated by their faith, without any justification reasonably related to legitimate penological interests. See Graham v. C.I.R., 822 F.2d 844, 850-51 (9th Cir.1987) (stating that government action burdens a prisoner's practice of his religion if he is prevented from engaging in conduct mandated by his faith), aff'd sub nom., Hernanciez v. C.I.R., 490 U.S. 680, 699 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987) (prison regulation need only be "reasonably related to legitimate penological interests.").[8]
 
 
 13
 Plaintiffs' allegation that their inability to use prayer rugs substantially burdens the practice of their religion fails because they do not raise genuine issues of whether prayer rugs are central tenets to the Islamic religion. Plaintiffs merely argue that because Muslims pray by bowing and placing their forehead to the ground, prayer rugs are "necessary" for hygienic purposes. There is nothing to suggest, however, that state issued blankets, which inmates are authorized to use in lieu of prayer rugs, would not adequately serve this purpose.
 
 
 14
 The district court's grant of summary judgment in favor of defendants Gomez and Prunty is AFFIRMED.
 
 
 
 **
 The Honorable Milton I. Shadur, Senior United States District Court Judge for the Northern District of Illinois, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Although approximately 17 individuals are identified as plaintiffs in the complaint, only plaintiffs Muhammad, Bartholomew, and Oliver are parties to this appeal
 
 
 [2]
 Defendants ask this court to decline jurisdiction on the basis that the Notice of Appeal was filed late. We refuse to do so. Pursuant to Federal Rules of Appellate Procedure 4(a)(1), plaintiffs had 30 days from entry of judgment or the order appealed from in which to file a notice of appeal. Fed. R.App. P. 4. Although the district court's order was filed on January 3, 1996, judgment was entered on January 4, which makes the February 6 Notice of Appeal timely
 
 
 [3]
 Plaintiffs were granted leave to proceed in forma pauperis on January 27, 1994. Counsel was appointed for plaintiffs at the appellate level
 
 
 [4]
 As for defendants' argument that plaintiffs' claims against these three defendants would be barred by the doctrines of res judicata and collateral estoppel, we find that this issue is not presently before us and we decline to rule on it
 
 
 [5]
 Plaintiffs' allegation that defendants denied Muslim inmates the opportunity to participate in Friday Jumah service on August 11, 1995 and November 17, 1995 while the prison was on lockdown was not raised before the District Court and cannot be reviewed by this court. See Singleton v. Wulff, 428 U.S. 106, 120 (1976) (stating "[i]t is the general rule ... that a federal appellate court does not consider an issue not passed upon below.")
 
 
 [6]
 Plaintiffs also claim that their inability to use prayer rugs amounts to a free exercise violation. See discussion under section III
 
 
 [7]
 In their appeal, plaintiffs add a claim not found in their First Amended Complaint to the District Court and not addressed by the District Court in its summary judgment order. Plaintiffs allege they were substantially burdened in the practice of their religion because inmates assigned to outside work for the day are not allowed to return to the prison to attend Jumah services. References to this claim are found on pages 9 and 12 of Plaintiffs' Motion for a Writ of Mandate for an Emergency Transfer From Pelican Bay State Prison and/or Temporary Restraining Order and/or Preliminary Injunction Against Defendants at Pelican Bay State Prison: Rules of Mandate, and Rule 65, Fed.R.Civ.P. and Memorandum of Points and Authorities in Support Thereof, which was filed on October 27, 1995. Because this claim was not properly raised before the District Court, we decline to rule on it. See Singleton, 428 U.S. at 120. However, this regulation would not run afoul of the free exercise clause because it is reasonably related to a legitimate penological interest, that of maintaining the security of the prison. See O'Lone v. Shabazz, 482 U.S. 342, 350 (1987) (stating that "concerns of institutional order and security" motivated prohibition against allowing inmates on outside work assignments from returning to prison midday)
 
 
 [8]
 On June 25, 1997, the United States Supreme Court held unconstitutional the Religious Freedom and Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4 (1993), as an act in excess of Congress' authority under section 5 of the Fourteenth Amendment. City of Boerne v. P.F. Flores, 117 S.Ct. 2157 (1997). Therefore, the applicable test in free exercise challenges is whether the prison regulation is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89; see also O'Lone, 482 U.S. at 349 (prison regulations judged under less restrictive reasonableness standard)