141 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeffrey Merrick LOGAN, Plaintiff-Appellant
v.
Samuel A. LEWIS, Director of Corrections, individual and
official capacities; Tim Murphy, individual and official
capacities; Travis Badgett, individual and official
capacities; J. Dahlke, individual and official capacities;
Errol Grant, individual and official capacities; John R.
Thompson; Bhisham Naraine; Chaplain Butler; Chaplin
Landsford; Sgt. Leclerc, Defendants-Appellees
 No. 97-15351.
D.C. No. CV-94-01755-RGS/MS.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 11, 1998**.
Decided Mar. 2, 1998.
 
 Appeal from the United States District Court for the District of Arizona Roger G. Strand, District Judge, Presiding.
 Before SCHROEDER, FARRIS, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jeffrey M. Logan, an Arizona state prisoner, appeals pro se the district court's summary judgment in favor of state prison officials in Logan's 42 U.S.C. § 1983 action alleging that prison officials wrongfully denied him the right to attend Jehovah's Witness services, refused to provide him with a vegetarian diet, violated his equal protection rights, and violated his due process rights by refusing to consider grievances he filed. Logan also contends that the district court erred by setting aside an entry of default against one of the defendants. We review the district court's grant of summary judgment de novo, see Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir.1994) (per curiam), and we affirm.[1]
 
 
 3
 Logan contends that the district court erred by granting summary judgment for defendants on his claim that prison officials violated his First Amendment rights by refusing him access to Jehovah's Witness religious activities. Logan argues (1) that prison officials unreasonably delayed responding to his request for change in religious preference, and (2) that the request form itself improperly required the approval of a religious leader.
 
 
 4
 The district court reviewed Logan's free exercise claims under the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb-2000bb-4. In light of the Supreme Court's ruling that RFRA is unconstitutional, see City of Boerne v. Flores, --- U.S. ----, ----, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997), we determine the reasonableness of the prison officials' actions pursuant to the pre-RFRA factors articulated in Turner v. Safley, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir.1997); Cf. O'Lone v. Estate of Shabazz, 482 U.S. 342, 352, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Anderson v. Angelone, 123 F.3d 1197, 1198 (9th Cir.1997).
 
 
 5
 Prisoners do not lose all rights to free exercise of religion upon incarceration. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam). The rights retained include the right to congregate for prayer or discussion, see O'Lone, 482 U.S. at 348, as well as a "right to be provided with food sufficient to sustain [prisoners] in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 883 F.2d 196, 198 (9th Cir.1987). However, a prisoner's free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone, 482 U.S. at 348. A regulation will be valid "if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89-90.
 
 
 6
 Turner sets forth four factors to consider in determining whether a regulation is valid. The court should assess: (1) the connection between the prison regulation and a legitimate penological interest; (2) any alternative means of exercising the right that remain open; (3) the impact accommodation of the asserted right would have on prison resources; and (4) the presence or absence of alternatives to the regulation. Id. at 89.
 
 
 7
 Viewing the evidence in the light most favorable to Logan, see Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 712 (9th Cir.1990), we may assume that Logan raises a genuine issue of material fact regarding prison officials' receipt of his request for change in religion, see Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). However, the use of the form, in and of itself, does not pose a substantial burden on an inmate's right to free exercise and is reasonable in light of legitimate penological concerns. The district court did not err in finding that Logan had not created a genuine issue of material fact as to whether the officials ignored his alleged requests.
 
 
 8
 Moreover, prison officials' interest in separating bona fide religious adherents from inmates attempting to use prison religious activities for other purposes is a legitimate penological interest justifying the requirement of a statement from a certified religious leader. See O'Lone, 482 U.S. at 350; Turner, 482 U.S. at 89. Logan does not demonstrate a feasible alternative method to make such a determination of inmates' religious bona fides. See O'Lone, 482, U.S. at 350; Turner, 482 U.S. at 89. The district court did not err by granting defendants summary judgment on this claim. See Barnett, 31 F.3d at 815.
 
 
 9
 Logan also contends that prison officials violated his First Amendment rights by refusing him a vegetarian diet. Although Logan acknowledges that Jehovah's Witnesses are not required by their religion to eat a vegetarian diet, he submitted evidence that his personal interpretation of the Jehovah's Witness's Bible compels him to avoid meat. Although he has the right to food which satisfies the dietary laws of his religion, see McElyea, 833 F.2d at 198, to show a free exercise violation, Logan must demonstrate that prison officials interfered with a tenet or belief which is central to religious doctrine. See Graham v. C.I.R., 822 F.2d 844, 850-51 (9th Cir.1987). Although Logan presented evidence that it was his sincere personal belief that the Jehovah's Witness's Bible forbade him from eating meat, he is unable to show that this belief is central to that religion's doctrine. See id. The district court did not err in granting defendants summary judgment on this claim.
 
 
 10
 Further, upon this record, Logan has not raised a genuine issue of material fact as to whether he was treated differently from other similarly-situated inmates. See Cruz, 405 U.S. at 322 n. 2; Allen v. Toombs, 827 F.2d 563, 569 (9th Cir.1987). As with free exercise, prisoners enjoy equal protection of the law "subject to restrictions and limitations necessitated by legitimate penological interests." Freeman, 125 F.3d at 737. Equal protection ensures that prison officials cannot discriminate against particular religions. Id. Practitioners of minority religions must be afforded "a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz, 405 U.S. at 322. Accommodations need not be identical. Id. at 322 n. 2. Rather, prisons must make "good faith accommodation of the [prisoner's] rights in light of practical considerations." Allen, 827 F.2d 563, 569 (9th Cir.1987) (citation omitted). A prisoner must show intentional discrimination to support a § 1983 claim. FDIC v. Henderson, 940 F.2d 465, 471 (9th Cir.1991).
 
 
 11
 Logan supports his equal protection claim with evidence that, for a brief period in 1994, cell doors were unlocked for all prisoners who wished to attend Catholic or Protestant services. The record indicates an official explanation that such practices were done to "simplify the turnout process." During this time, those on the much smaller Jehovah's Witness list were also allowed to worship at regular intervals. The treatment of the religions differs. However, identical accommodations are not required. Cruz, 405 U.S. at 322 n. 2. Without more, Logan's evidence fails to show any defendants' intent to discriminate against his religion or that Jehovah's Witnesses were not afforded a comparable opportunity to practice their faith.
 
 
 12
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We may affirm the decision of the district court on any basis supported by the record. See United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992)